**Richard G. Fonfrias, Esq.**
FONFRIAS LAW GROUP, LLC
125 S Wacker Dr., #300
Chicago, IL 60606
Phone: 312-969-0730
Email: richprivatemail@protonmail.com
*Attorney for Debtor(s)*

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| In re: | |
|---|---|
| | Bankruptcy No: 21-07478 |
| 1600 HICKS ROAD LLC | |
| | Chapter: 11 |
| Debtor(s), | Judge: Honorable David D. Cleary |

## CERTIFICATE OF SERVICE

I, Richard G. Fonfrias, attorney for Debtor(s), hereby certify that on September 12, 2021 a true and correct copy of the Chapter 11 Plan was served upon all persons entitled to receive notice in this case via ECF Notification or by U.S. Mail to the parties listed in the attached mailing matrix or listed as ECF recipients, including:

| | |
|---|---|
| US Trustee | Gretchen Silver, Trustee |
| *via ECF* | *via ECF* |

DATED: September 12, 2021

        FONFRIAS LAW GROUP, LLC

        /s/ Richard G. Fonfrias
        Richard G. Fonfrias
        Attorney for Debtor(s)

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0752-1<br>Case 21-07478<br>Northern District of Illinois<br>Eastern Division<br>Mon Jul 19 13:07:33 CDT 2021 | 1600 Hicks Road, LLC<br>1600 Hicks Road<br>Rolling Meadows, IL 60008-1231 | EH National Bank<br>Heavner, Beyers & Mihlar, LLC<br>111 East Main Street<br>Decatur, IL 62523-1204 |
| U.S. Bankruptcy Court<br>Eastern Division<br>219 S Dearborn<br>7th Floor<br>Chicago, IL 60604-1702 | Anam Qadri<br>351 Jennifer Lane<br>Roselle, IL 60172-4946 | EH National Bank<br>8484 Wilshire Blvd.<br>Suite 100<br>Beverly Hills, CA 90211-3212 |
| Exotic Motors Inc.<br>1600 Hicks Road<br>Rolling Meadows, IL 60008-1231 | Heavner, Beyers & Mihlar, LLC<br>100 N. LaSalle Suite 1410<br>Chicago, IL 60602-3534 | Saleem Qadri<br>351 Jennifer Lane<br>Des Plaines, IL 60017-2000 |
| Patrick S Layng<br>Office of the U.S. Trustee, Region 11<br>219 S Dearborn St<br>Room 873<br>Chicago, IL 60604-2027 | Richard G. Fonfrias<br>Fonfrias Law Group, LLC.<br>125 South Wacker Drive<br>Suite 300<br>Chicago, IL 60606-4421 | End of Label Matrix<br>Mailable recipients    10<br>Bypassed recipients     0<br>Total                  10 |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 21-07478 |
| 1600 HICKS ROAD, LLC, | ) | |
| | ) | Honorable David D. Cleary |
| Debtor. | ) | |

DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

NOW COMES Debtor, 1600 Hicks Road, LLC ("Debtor" or "Hicks"), by its attorneys, Richard G. Fonfrias and David Lloyd., and pursuant to 11 U.S.C. §1121 proposes this Chapter 11 Plan of Reorganization (the "Plan").

I. BACKGROUND

1. On June 15, 2021, Debtor filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division seeking to reorganize under Chapter 11 of the Bankruptcy Code.

2. The Debtor is an Illinois limited liability company that was organized on June 7, 2008. The business of the Debtor is real property management of property located at 1600 Hicks Road, Rolling Meadows, IL 60008. Debtor is an obligor on the mortgage note held by EH National Bank (hereinafter "EH"). The monthly mortgage payment due to EH, pursuant to the note, is set at approximately $13,521.10. Debtor has made each monthly mortgage payment due to EH since the filing of this case.

3. Debtor leases the property to Exotic Motors Inc. (hereinafter "Exotic") on a month to month agreement. Exotic operates a used car dealership on the property.

4. The Debtor initiated its bankruptcy case because EH had pursued foreclosure of the property in the Circuit Court of Cook County. The case number of the foreclosure proceeding is 2018CH04670.

5. The deadline for Debtor to file a plan has been set for September 13, 2021. No claims have been filed to the case.

6. Debtor anticipates only one claim will be filed to the case by EH and the estimated balance of that claim is $1,539,998. Debtor further anticipates the claim will be filed as a secured claim.

7. Debtor is actively pursuing an appraisal of 1600 Hicks Road, Chicago IL wherein Debtor anticipates the property will be valued at approximately $620,000. Pending the results of this appraisal, Debtor anticipates approximately $919,998 of the claim filed by EH will be a general unsecured non-priority claim.

II. SUMMARY OF THE PLAN

Through this Plan, the Debtor proposes to pay its creditors on their respective allowed claims from proceeds from the Debtor's lease payment receipts from Exotic. Debtor will continue to make the regular monthly mortgage payment due to EH directly to EH outside of the Plan. In addition, Debtor will pay $180,000 to EH over the term of the plan. The settlement reached between the parties of the mortgage arrearages is $180,000. The Debtor will cure this arrearage ove the ten (10) year term of the plan. The term of the Plan shall not exceed a period of ten (10) years. Commencing on the Effective Date, which date shall be fourteen (14) days following the entry of a Final Order confirming the Debtor's Plan, or such other date as is set forth herein, the Debtor will commence disbursing payments to its creditors, as follows:

a. Debtor-in-Possession Operating Expenses and Claims – The Debtor has paid all Debtor-in-Possession operating costs, expenses, and obligations as they became due, pursuant to the credit terms established between the Debtor and each of its creditors. No Debtor-in-Possession operating costs, expenses, obligations or claims will remain unpaid at the Effective Date of the Plan, other than those operating costs, expenses or obligations and claims which are due in the ordinary course of the Debtor's affairs. These Debtor-in-Possess operating costs, expenses, obligations or claims shall be paid as they become known and due.

b. Administrative Claims – Any Administrative Claims that may become due and approved by the Bankruptcy Court, including Fee Claims owed to Richard G. Fonfrias and David Lloyd, shall be paid, in full, in cash on the later of (1) the day prior to the Effective Date; (2) upon approval by the Bankruptcy Court of such Administrative Claims; or, (3) on such other terms as agreed upon between the Debtor and the claimant asserting the Administrative Claim.

c. Priority Claims – Priority Claims entitled to priority pursuant to §507(a), other than Administrative Claims, shall be paid, in full, on or before 90 days from the Effective Date, or as soon as practicable thereafter.

d. Payment to other Creditors. Through the Plan of Reorganization, the Debtor is seeking to pay the balance of its creditors from the Sources, as set forth herein.

DEFINITIONS

1. "Administrative Claim" shall mean any cost or expense of the administration of this Case entitled to priority in accordance with the provisions of 11 U.S.C. §§ 364(c)(1), 503(b), 507(a)(1) and (b), including, without limitation, (a) any actual and necessary expenses of preserving the Debtor's estate and operating the Debtor's business; (b) all compensation or

reimbursement of expenses to the extent allowed by the Bankruptcy Court under 11 U.S.C. §§ 330, 331 or 503, including attorneys', paralegals', and accountants' fees and costs; and (c) any fees or charges, including fees due the United States Trustee, assessed against the Debtor's estate under Chapter 123 of Title 28 of the United States Code.

2. "Allowed Claim" shall mean any Claim (including Secured Claims) against the Debtor (a) for which a proof of claim was timely and properly filed before the Bar Date, or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor on his schedules or amended schedules as liquidated in amount and non-disputed or non-contingent, and, in either such case, a Claim as to which no objection to the allowance thereof has been interposed on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Court or the Plan, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of a claimant; or (b) based on a fee application, to the extent the Bankruptcy Court approves such fee application. Unless otherwise specified herein or by order of the Bankruptcy Court, Allowed Claims shall not include interest on such Claims of the period from and after the Petition Date, nor shall they include any Claim which may be disallowed under 11 U.S.C. § 502(d).

3. "Assets" mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof existing as of the Effective Date.

4. "Available Cash" means the aggregate of all Cash and Cash Equivalents held by the Debtor.

5. "Avoidance Actions" shall mean those actions which a debtor or a trustee may institute pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 550 and 553.

6. "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended and set forth in Section 101 et seq. of Title 11 of the United States Code, including the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005, and any other amendments that may presently or hereafter apply to these Cases.

7. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, and the United States Bankruptcy Judge presiding in the Debtor's Chapter 11 case or the United States District Court for the Northern District of Illinois sitting as a bankruptcy court and any United States District Court Judge presiding therein.

8. "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as the same may be amended and modified from time to time, and as applicable to cases pending before the Bankruptcy Court.

9. "Bar Date" shall mean that date that will be set by the Bankruptcy Court by which creditors must file proofs of claims.

10. "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

11. "Case" shall mean Case No. 21-02059, currently pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

12. "Cash" shall mean cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, commercial paper of any entity, and letters of credit.

13. "Chapter 7" shall mean 11 U.S.C. §701, et al., as amended.

14. "Chapter 11" shall mean 11 U.S.C. §1101, et al., as amended.

15. "Claim" means a "claim", as defined in §101(5) of the Bankruptcy Code and shall mean any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.  The classification of Claims pursuant to the Plan is set forth in Article I hereof.

16. "Claims Reserve" shall mean one or more segregated interest-bearing accounts in which cash shall be held in accordance with the terms of the Plan.

17. "Confirmation Date" shall mean the date on which the Confirmation Order is entered on the docket for the Case.

18. "Confirmation Order" shall mean the order of the Bankruptcy Court, pursuant to 11 U.S.C. § 1129, as amended, confirming the Plan and approving the transactions contemplated therein.

19. "Contested Claim" shall mean any Claim or any portion of any Claim as to which the Debtor or any other party in interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

20. "Contested Interest" shall mean any Interest or any portion of any Interest as to which the Debtor or any other party in interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

21. "Debtor" shall mean the Debtor, 1600 Hicks Road, LLC.

22. "Distribution Account" shall mean an account at a federally insured depository institution to be used by the Debtor to make distributions under this Plan.

23. "Effective Date" shall mean the fourteenth (14th) day following the Confirmation Date. "Final Order" shall mean an order which has become final for purposes of 28 U.S.C. §§ 158 and 1291, including, but not by way of limitation, any order (a) which is no longer subject to appeal or certiorari proceeding, (b) as to which an appeal or certiorari proceeding is pending but a court order granting a stay has not been entered, or (c) as to which any appeal or certiorari proceeding has been rendered moot pursuant to applicable provisions of federal law.

24. "Impaired Class" shall mean a Class of Claims which is impaired under 11 U.S.C. § 1124.

25. "Interest" shall mean any equity interest in the Debtor, including without limitation (a) any membership interests, (b) any rights, options or warrants to purchase such membership interests or securities convertible into or exchangeable for such membership interests, or any rights to have the Debtor repurchase or redeem such shares, or (c) any other direct or indirect legal or beneficial interests in such membership interests.

26. "Petition Date" shall mean June 15, 2021, in the instant case.

27. "Plan" shall mean the Debtor's Chapter 11 Plan.

28. "Priority Claim" shall mean any pre-petition Claim entitled to priority in payment under 11 U.S.C. §§ 507(a), (3), (4) or (6).

29. "Professional Persons" shall mean persons, including counsel and accountants for the Debtor, retained or to be compensated pursuant to 11 U.S.C. §§ 327, 328, 330, 331, 503(b) or 1103.

30. "Pro Rata" shall mean in connection with a particular Allowed Claim and in connection with any distribution, the ratio between the amount of such Allowed Claim and the aggregate amount of all Allowed Claims in such class or classes entitled to such distribution.

31. "Secured Claim" shall mean any Claim that is secured by a lien, mortgage, security or collateral interest, trust deed, encumbrance or other interest that has been properly perfected as required by law with respect to property of the estate, to the extent of the lesser of the value of the collateral or the amount of the Claim.

32. "Tax Claim" shall mean any Allowed Claim that arose pre-petition and is entitled to priority under 11 U.S.C. § 507(a)(8). Tax Claims do not include ad valorem tax claims if those Claims under applicable state law are secured by a lien on real or personal property.

33. "Ultimately Allowed Claim" shall mean any Contested Claim that has become an Allowed Claim.

34. "Unimpaired Class" shall mean a class of Claims which is not impaired within the meaning of 11 U.S.C. § 1124.

35. "United States Trustee" shall mean the United States Trustee for the Northern District of Illinois.

36. "Unsecured Claim" shall mean all Claims for unsecured debts or liabilities of any character whatsoever arising prior to the Petition Date.

37. "Unsecured Creditor" shall mean any Person who is the holder of an Unsecured Claim. Unless otherwise stated, all other terms shall have the meaning given to them under the Bankruptcy Code or Bankruptcy Rules.

# THE PLAN
# ARTICLE 1
# CLASSIFICATION OF CLAIMS

1.1     <u>Unclassified Claims</u>.  Unclassified Claims shall be all Administrative Claims (unimpaired class).

1.2     <u>Class I Claims</u>.  Class I Claims shall be all Allowed Priority Claims, including those claims of the taxing authorities (impaired class).  The Debtor does not know of any claims in this class.

1.3     <u>Class II Claims</u>.  Class II Claims shall be the allowed claims which are partially secured and partially unsecured.  The claim by EH is in this class of claims.

1.4     <u>Class III Claims.</u> Class III Claims shall be the allowed Claims of all other unsecured creditors.

# ARTICLE 2
# MEANS OF FUNDING THE PLAN

Except as set forth herein, the funding sources for the Plan shall be the income received by Debtor pursuant to the lease agreement between Debtor and Exotic Motors Inc.

# ARTICLE 3
# TREATMENT OF UNIMPAIRED CLAIMS

3.1 Unclassified Claims.  The Debtor shall pay all Allowed Administrative Claims on the Effective Date, or as soon thereafter as reasonably practicable, a Cash distribution equal to 100% of their Allowed Claims to the extent the Claims have not been allowed and paid prior to that date.  The Trustee shall not pay any Professional Person until the Bankruptcy Court, after notice and a hearing, enters an order approving such payment.

3.2 Class I Claims (Priority Claims). The Debtor shall pay all Allowed Class I Claims a Cash distribution equal to 100% of their Allowed Claims, in full, on or before four years from the date of assessment. Notwithstanding anything to the contrary, if a Class I Claim is a Contested Claim on the date of any distribution to holders of Class I Claims, sufficient Cash shall be reserved by the Debtor in a Claims Reserve to pay the Creditor holding such Contested Claim its Pro Rata share of the proceeds available for distribution pending resolution of the dispute as if the Contested Claim then pending was an Allowed Claim in the full amount thereof. The Allowed Claims in this class will be paid from any of the Sources.

3.3 Class II Claims. The Class II Claims are represented by the claims of EH. Through this Plan of Reorganization, the Debtor will continue to cause the payment to EH pursuant to the contract terms provided in the loan documents between the Debtor and EH. These monthly payments shall come from the Sources.

3.4 Class III Claims. As of this date, Debtor anticipates no Class III claims will be filed to the case.

ARTICLE 4
PROHIBITIONS RELATED TO EQUITY SECURITIES

4.1 Because the Debtor is not an individual the need exists to prohibit the issuance of nonvoting equity securities, pursuant to §1123(a)(6) of the Bankruptcy Code.

ARTICLE 5
MEANS FOR FUNDING PAYMENTS UNDER PLAN

5.1 On the Effective Date, the Debtor shall pay all Unclassified Claims, and Class I Claims. Thereafter, any funds received by the Debtor to fund the Plan shall be transferred to a Distribution Account on a monthly basis to pay the Allowed Claims of the creditors of this bankruptcy estate.

# ARTICLE 6
# TREATMENT OF IMPAIRED CLAIMS

The claims in Classes II and III are impaired.

6.1 <u>Class II Claims.</u> The Class II Claims are represented by the claim of EH. The Debtor will continue to make current monthly payments to EH pursuant to the terms of its mortgage. The Debtor will cure the post-petition arrearage of $180,000.00 in monthly payments of $1,500.00/month for 120 months until the arrearage is paid in full.

6.2 <u>Class III.</u> The Class III Claims are represented by the claims of General Unsecured Creditors. Through this Plan of Reorganization, the Debtor proposes to pay to this class of creditors on or before four (4) years from the Effective Date from the Sources. The Debtor knows of no claims in this Class.

# ARTICLE 7
# AVOIDANCE ACTIONS AND CAUSES OF ACTION

The Debtor shall have the exclusive right to pursue any and all Avoidance Actions and other causes of action of the Debtor pending on the Effective Date or filed thereafter. Debtor shall file all such Avoidance Actions and causes of action no later than 120 days after the Effective Date. Notwithstanding anything to the contrary herein, on the Effective Date, Debtor waives any right to seek contribution, reimbursement or indemnity from any person based on or as a result of Debtor's payment of Allowed Claims hereunder.

# ARTICLE 8
# MODIFICATION OF THE PLAN

Debtor may propose modifications to the Plan in writing at any time before the Confirmation Date. Subject to the terms and provisions of the Plan, Debtor may modify the Plan at any time after the Confirmation Date and before his substantial consummation, provided that

the Bankruptcy Court approves such plan, as modified. Where the Bankruptcy Court requires a revote, holders of a Claim that have accepted or rejected the Plan shall accordingly be deemed to have accepted or rejected the Plan as modified, unless such holder changes his vote within the time the Bankruptcy Court fixes.

## ARTICLE 9
## METHODS OF DISTRIBUTION UNDER THE PLAN

9.1     Disbursing Agent.  The Debtor shall act as the disbursing agent for all disbursements under the Plan, except for the Unclassified Claims and Claims I claims.

9.5  Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day but shall be deemed to have been completed as of the required date.

## ARTICLE 10
## EFFECTS OF CONFIRMATION OF THE PLAN

10.1  Rights of Action.  Any rights or causes of action owned by or accruing in favor of the Debtor (including those arising from the Bankruptcy Code or from these Cases) pending on the Effective Date or filed thereafter shall remain assets of the Debtor's estate to be pursued exclusively by the Debtor.  The Debtor may pursue, abandon, settle or release all rights of action, as appropriate, in accordance with what is in the best interests, and for the benefit, of the Debtor's creditors.

10.2  Pending Adversary Proceedings.  All adversary proceedings pending on the Confirmation Date shall continue to be heard by the Bankruptcy Court after the Confirmation Date.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1     The Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)     To determine any and all applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and, if need be, to liquidate, determine or otherwise adjudicate any and all

Claims arising therefrom, including without limitation, Claims for the

curing of defaults under executory contracts or unexpired leases assumed by the Debtor.

(b)     To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date or retained causes of action that may be commenced thereafter.

(c)     To hear and to determine any objections to the allowance of Claims.

(d)     To hear and determine applications for compensation of Professional Persons and reimbursement of expenses under 11 U.S.C. §§ 330, 331 and 503(b), if required under the terms of the Plan.

(e)     To enter and implement such orders as may be appropriate in the event confirmation is for any reason stayed, reversed, revoked, modified or vacated.

(f)     To hear the application of the Debtor, if any, to modify the Plan in accordance with 11 U.S.C. § 1127 and Article 8 herein.  After the

Confirmation Date, the Debtor may also institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, provided that prior notice of such proceedings is served in accordance with Bankruptcy Rules 2002, 7004 and 9016.

(g) To hear and determine disputes arising in connection with the Plan or his implementation.

(h) To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code.

(i) to hear and adjudicate Motions to sell real properties under Section 363 of the Bankruptcy Code in case the Debtor cannot timely cure any defaults under the terms of the Plan.

## ARTICLE 12
## GENERAL PROVISIONS

12.1 <u>Notices</u>. All notices, requests or demands given to the Debtor in connection with the Plan shall be made in writing and shall be deemed to have been given when received or, if mailed, five business days from the date of mailing, First Class, postage prepaid, and shall be given to the Debtor's counsel, Richard G. Fonfrias, Fonfrias Law Group, LLC, 125 S Wacker Dr., #300, Chicago, IL 60606 and David P. Lloyd, David P. Lloyd, Ltd., 615B S. La Grange Road, La Grange, IL 60525. All payments, notices and requests to holders of Claims shall be sent to them at their last known address. The Debtor or any holder of a Claim may designate in writing any other address for purposes of this Section 13.1, which designation shall be effective upon receipt or upon publication of such notice as it is approved by the Bankruptcy Court.

12.2 <u>Headings</u>. The headings used in the Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan.
<u>Severability</u>. Should any provision in the Plan, or his application to any entity, be determined to be unenforceable to any extent, the remainder of the Plan, and the application of such provision to any other entity, shall not be affected thereby, and the Plan shall be enforced to the greatest extent permitted by law, except to the extent the unenforceable provision is a material term of the Plan.

12.3     Binding Effect.  The rights and obligations of any entity named or referred to in the Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such entity.

12.4     Post-Effective Date Professional Fees.  Subsequent to the payment of Allowed Administrative Claims for professional fees pursuant to sections 330 and 331 of the Bankruptcy Code through the Effective Date, the professionals of the Debtor and the Trustee shall be entitled to reasonable compensation by Order of the Court.

12.5     Revocation or Withdrawal of Plan.  Except as otherwise provided in this Plan, the Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date or Effective Date do not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver, release, admission or concession of any claims or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings or actions involving the Debtor.

12.6     Filing of Additional Documents.  On or before substantial consummation of the Plan, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.7     Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributions hereon, the Debtor ~~and the Trustee~~ shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

12.8    Reservation of Rights.  If the Plan is not confirmed by the Bankruptcy Court or any other court of competent jurisdiction for any reason, the rights of all parties in interest in these Cases are and will be reserved in full.  Any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in these Cases shall be bound or deemed prejudiced by any such concession.

12.9    Governing Law.  Except to the extent that a rule of law or procedure is governed by federal law, including the Bankruptcy Code and Bankruptcy Rules, Illinois law shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, and the rights and obligations of any parties under the Plan, except to the extent that such agreements, documents and instruments themselves provide for different governing law.

ARTICLE 13

LIQUIDATION ANALYSIS, PROJECTIONS AND FEASIBILITY OF PLAN

Under the provisions of the Bankruptcy Code, the Plan must be in the best interest of creditors by providing a return of not less than the amount they would receive in a Chapter 7 liquidation. The distribution scheme proposed by the Debtor in the Plan reflects that all claimants will be receiving distributions equal to or in excess of any amounts that they would receive under Chapter 7 of the Bankruptcy Code.   In the event of a Chapter 7 liquidation the creditors of the bankruptcy estate will not be paid in full.   As reflected in the Plan and the Debtor's Schedules, the Debtor has the following assets:

| ASSET | VALUE | LIENS | NET PROCEEDS IF LIQUIDATED |
|---|---|---|---|
| Real Property, 1600 Hicks Road, Rolling | $620,000 | EH $1,539,998.62 | $0.00 |

| Meadows, IL 60008 | | | |
|---|---|---|---|

As such, if the Debtor's assets were sold, there would be no sufficient funds to satisfy the creditors' claims in full (i.e., without taking into account the costs and expenses of liquidation, there would be a shortfall of at least $919,998.00: meaning the difference between the total asset values of $620,000 and the total claims of $1,539,998.62, equals $919,998.00). The Debtor believes that its financial reporting will be the same or better during the term of the Plan.

The Debtor believes that the confirmation and implementation of the Plan is feasible, and preferable to liquidation. The confirmation of the Plan will result in the greatest possible recoveries to holders of claims and interests. The Plan is feasible because the Debtor possesses the financial capacity to fund the Plan. The Debtor does not believe that after confirmation of the Plan, it will need to further reorganize or otherwise need to restructure the claims of its creditors. For all of these reasons, the terms of the Plan are feasible.

DATED: September 12, 2021

DEBTOR: 1600 Hicks Road, LLC

By:     /s/ Richard G. Fonfrias           By:      /s/ David P. Lloyd

Richard G. Fonfrias                David P. Lloyd
Fonfrias Law Group, LLC.           David P. Lloyd, Ltd.
First National Plaza               615B S. La Grange Road
125 S Wacker Dr., #300             La Grange, IL 60525
Chicago, IL 60606                  P: 708-937-1263
P: 312-969-0730
F: 312-624-795422